First case on our call this morning is agenda number 10, case number 109047. Susan Lynn Baumgartner v. Greg Baumgartner. I think counsel may proceed. Thank you, your honor. May it please the court, counsel. My name is Andrea Cherva, and I represent the petitioner, Craig Baumgartner. We are before the court today to ask that the ruling of the first district of the appellate court be reversed. Craig and Susan Baumgartner were divorced on April 13, 1998. They had one son, Max, who was born on July 23, 1987. Max reached his majority on July 23, 2005. Max graduated from high school on June 2, 2005. The marital settlement agreement reached by Craig and Susan Baumgartner provided that Max's college expenses would be addressed by the applicable section of the Illinois Marriage and Dissolution of Marriage Act in force when Max graduated from high school. Section 513A1 of the act provided that educational support may be awarded by the court after a son or daughter has reached the age of majority, provided that they are not otherwise emancipated. What constitutes emancipation is a question of law, but whether there has been an emancipation is a question of fact. Ms. Cherva, let me ask you a couple of procedural matters before we get into argument. I mean, how much should this court allow you to argue? And what I mean by that, it appears to me that you stood on your PLA, right? Yes. And the argument section of that is one paragraph long. Correct. Right? Does that comply with the Rule 341E7? I believe it does, Your Honor. And how? I believe that what we're- Well, let me just quote the portion of that. Shall contain the contentions of the appellant and the reasons, therefore, with citation of the authorities and the pages of the record relied on. Do you believe that the argument section of your brief complied with this rule? I do, Your Honor. I believe our petition for leave contained references to the record and appropriate citations to case law that would allow this court to rule in our favor. Would you agree with the portion of the rule, then, that says points not argued are waived and shall not be raised in the reply brief in oral argument or on petition for rehearing? That's why I started out with the initial question. How much should we allow you to argue? Just what we feel is contained in that one paragraph? I believe everything in the petition for leave to appeal is relevant and before this court. And I believe I should be allowed to argue those things. Just from that, or are you going to go outside of the argument section of your PLA, which you're standing on? The only thing I was going to argue before this court is what was contained in the petition for leave. All right. I note that the opposing counsel was able to make a 20-page argument in support of the appellee's side of the argument, but you made a six-sentence argument in support. So is it fair to us to allow him to argue based on the points that he raised in a brief, which we had the opportunity to study and you had six lines for us to look at? Well, respectfully, Your Honor, there is not a lot of case. There are no cases on point to this issue specifically. So whether opposing counsel chooses to cite one case or 23 pages of cases, that is his right to do. But I believe this court, in its authority, can look at what happened to this case and the case last cited by the trial court, the appellate court, and myself and make its decision from those things. Okay. I believe a portion of the reason for the rule is the fact that this court isn't to play advocate, and I'm just having a difficult time seeing how we would not be playing advocate based on the relatively, not even relatively, very short argument that you decided to stand on your PLA. But you can continue. Thank you, Your Honor. After attaining his majority, Max committed the offense of criminal sexual abuse of a minor. At his conviction, Max was sentenced to one year's reporting supervision, and as a condition of that supervision, Max was admonished by the trial court that any subsequent violation of any criminal statute would result in his immediate incarceration. Max, as an adult, was warned against reoffending. However, despite this warning, Max made a choice. Max chose to commit the offenses of criminal sexual abuse and indecent solicitation. He made those choices as a 20-year-old adult. Max was sentenced to the Illinois Department of Corrections for three years. Max was paroled in April of 2009 and has a projected discharge date of April 2010. The trial court entered an order relieving Craig of any future obligations to contribute to Max's post-high school educational costs or expenses, as the court found that Max's incarceration in the Illinois Department of Corrections to be a full emancipating event. After Max attained his majority and graduated from high school, neither parent owed Max a duty of support. No parent in this state is required to support a son or daughter who has attained their majority. Pursuant to Craig and Susan's marital settlement agreement, they each agreed to provide educational support to Max pursuant to Section 513. The legislature, in writing Section 513, only provided for educational support for a son or daughter who had attained their majority, provided they were not otherwise emancipated. If it had so desired, the legislature could have allowed awards for educational expenses, even in the case of emancipation other than by age, but it did not choose to do so. Marriage and entry into the military service are emancipating events. The trial court correctly found that Max's incarceration as an adult to likewise be an emancipating event. When a child who is physically and mentally able to take care of himself voluntarily abandons the parental roof and leaves its protection and influence and goes into the world to fight the battle of life on his own account, the parent is no longer under legal obligation to support him. And I'm reading from Iroquois Farm v. Industrial Commission. Max's choices and actions, though unfortunate, led to his emancipation. Counsel, is your client currently making monthly payments to provide for expenses for this boy? No. Once Max reached the age of 18 and graduated from high school, my client was no longer required to pay child support. And was there any petition to decrease or modify or terminate support filed at any time in this case? No, because no support was currently being paid. So how do we even know that this lad may ever want to go to college? I mean, are we taking a hypothetical question? No, Your Honor, and I don't believe we are left to guess what he's going to do. We know from the record what he did do. He chose not to go to college. He chose instead to embark on an unfortunate path that led him to the Department of Corrections as an adult. That is what he chose to do. But if he's 40 years old and they still file a petition with the court, he decides at some point in his life he wants to go to college, does this settlement agreement cover that? I suppose theoretically it could, but through Max's actions, he has left the parental roof and has thus been emancipated. But I'm still having trouble figuring out why this isn't just a hypothetical question without some indication that he wants to pursue a higher education. Susan Baumgartner never filed a petition for contribution to college expenses. That is correct. The agreement the father made was to pay the son's education expenses conditioned on the son's desire and ability to further his education. Correct, Your Honor. Nothing to do with emancipation. Well, the statute that the parties agreed to follow in their marital settlement agreement is Section 513. Section 513 says that a trial court may, in its discretion, award educational expenses provided that the son or daughter has not been emancipated through other means. For example, if the son or daughter married prior to going to college or in college, the educational support would cease based on marriage as an emancipating event. Whether or not incarceration amounts to emancipation, is that a fact-driven question? I'm sorry? Whether or not incarceration amounts to emancipation, is that a fact-driven question? Are you saying under the facts of this case there was emancipation or do you think there's a bright line rule that incarceration cannot lead to emancipation? I believe that incarceration as an adult, we are not speaking of children who offend as minors and are found delinquent, but when an adult in this state chooses a course of action that leads to a criminal conviction as an adult, I believe that then does signify an emancipating event. They are no longer in the control of their parents and following their influences. I would state that they've rejected those parental influences. So you're asking us then to rule as a matter of law that an adult who's incarcerated, that is an emancipating event, not look to whether or not we feel the trial judge abused their discretion in this particular case. I think the trial court was properly within her discretion to find that in this set of circumstances Max is going to prison as opposed to going to college which was an emancipating event. In looking at Iroquois Iron Company case, does the record show whether the son by his own action voluntarily abandoned the parents' roof, this is a quote from that case, and left his protection and influence and went out to live his own life? Yes, Your Honor. The record does show that that occurred? Well, when Max was in the Department of Corrections, he was clearly not resigning with either parent. There's been nothing in the record that shows either parent would support a criminal lifestyle in any sense. By Max going against the wishes of his parents and society and choosing the path that he did which led towards or to the Department of Corrections, I believe he made that choice freely and voluntarily. In fact, So you say the record will show that he was not living at home at the time? Correct. He was in the Department of Corrections. Was he at home before he was in the Department of Corrections or did he go to the Department of Corrections from living in an apartment somewhere else away from his parents? He was living with his mother when he committed the first offense and was sentenced to reporting supervision. From home? From home. Okay. I have another question with regard to you quoted the Dissolution Act and that the Dissolution Act may permit the judge to award expenses for higher education. Why did the parties enter into an agreement? What was the intent of the parties then to enter into agreement to provide educational services if, in fact, the dissolution agreement already provides for that? Does the record reflect what their intent might have been, that they were going to, over and above the Dissolution Act, support their child in higher education? No. I believe their intent can only be contained in the marital settlement agreement. There's nothing outside of that that I could point to. Did they, in the agreement, address higher education besides under the Dissolution Act? No. They simply stated that Max's post-high school education would be provided for in whatever section of the Act was applicable at the time he graduated. Okay. The adult child was at home when the first sentence was imposed, but how about the second sentence? He was also living with his mother. Okay. When did he end up going to the penitentiary in relation to these events? He went to the penitentiary after he, well, he didn't, he first was held in the jail after his arrest. He was charged with a subsequent offense. Yes. He was held on that? He was held on that, and then after his conviction, I'm sorry, it was a plea of guilty on the second set of offenses that he went to the Department of Corrections. The second set of offenses being another? It was, again, I'm sorry, criminal sexual abuse of a minor and indecent solicitation of a minor. He pled guilty to the substantive offense and to the violation of the supervision? Yes. Ms. Turbin, the trial court agreed with your position, right? Correct. And it appears that the trial court relied at least on part that since Max would be a registered sex offender, he couldn't be in the vicinity of any public park or private or public school. Is that right? Was that part of their? I believe the trial. Part of the trial court's determination? I believe that she found the fact that he went into the penitentiary to be a controlling factor. She didn't specifically state those other things. Did that come up at all, either in the appeal at all? Not in the appeal, no. Okay. So that issue is not before the court as to, under the facts of this case, since the incarceration involved a sex offense, that registering a sex offender might even prohibit Max from going to college? No. All right. So that's not an issue? No. All right. If there are no further questions, we would ask that this court respectfully reverse the ruling of the first district. Thank you. Thank you. Counsel may proceed. Counsel, Mr. Baumgartner. May it please the court. These are ugly facts, and I'm not going to pretend otherwise. I think we're all agreed that what Max did was heinous, but we are not here to retry what Max did. I'm not sure you stated your name, counsel. I beg your pardon, Your Honor. I'm Richard Kirk. I represent the appellee, Susan Baumgartner. Thank you. Focusing on the facts of this case presupposes that incarceration is an emancipating event as a matter of law. I believe counsel may have cited, I certainly did cite in my brief, that what constitutes an emancipation, that is a legal question, and whether an emancipation has occurred is a factual question. Now, the long-recognized means of emancipation, other than by reaching majority or statutorily under the Emancipation Act, are actual self-support. A child is out living on their own, making a living, they're putting a roof over their head, they're buying their own groceries, marriage, and joining the military service. Now, all of those require a factual analysis, then, whether or not they've occurred. Some cases out there are an in-rate marriage of Daniels, in-rate marriage of Donahoe. There are the cites on those. 296 for Daniels, 296 ILAP III. These are both in your brief, is that correct? 446. You know, frankly, for these cases, if the court would prefer me to restrict myself to the brief, I'm trying to address some of the issues that counsel for appellate raised. I believe Daniels and Donahoe are not in the brief. There's also some insurance cases out there that concern whether residency has created self-emancipation. Those are definitely not in the brief. So if you'd prefer me not to use those as example pieces. You're limited to what's in your brief. Very good, then. Counsel, let me back you up just for a moment. Because the appellants indicated the standard view is Donovo, and I believe you're suggesting it's Donovo as well. Is that right? Yes, Your Honor. But procedurally, this case comes to us on the petition that was filed to amend the dissolution judgment that had previously incorporated the marital settlement agreement of the parties. That's correct, Your Honor. That petition to amend, when the trial court makes that in the first instance, what's the standard? What's the burden of proof by the petitioning party? What do they have to show? Is it a substantial change in circumstances? And really, it's really a two-fold question. What is the standard review for that decision by the trial court? Is that an abuse of discretion, or is that really a Donovo? I realize it's an emancipation question, but it's the context of how this case comes to us. It is, and I think that answers some of the questions for the justices over on this side of the bench, that procedurally what happened in the trial court was that appellant brought a petition, the modified post-dissolution judgment provided that the parents would share college expenses after Max finished out high school, past the age of majority. Once Craig, I'm sorry, once Max was incarcerated, Mr. Baumgartner brought a petition to terminate his obligation to pay for those college expenses as they were incurred on the theory of a change in circumstances, which is the standard for modifying a child support obligation. Mr. Baumgartner, however, the record does show there is the transcript of the hearing on that petition in the record. I'm sorry, offhand, I don't have the page numbers for that, but it is in the appendix. Mr. Baumgartner presented no evidence. He did on his petition, alleging a change of circumstances, carry the burden of proof at that point. The court heard only argument of counsel. There was no evidence presented by either party, and our judge at trial ruled sua sponte not on the basis of a change in circumstances, but that as a matter of law, the incarceration equaled emancipation. We did offer a motion for reconsideration, which the trial court denied, and that's when we took it up on appeal. So that's how we arrived at this court. The change in circumstances, that's the legal standard, and then whether the facts of the father's situation, his income, the mother's income, the child's circumstances. If the child has fewer needs, has increased needs, certainly a change in circumstances can be on the increased needs of the child. Those then are the factual issues that would be subject to an abuse of discretion standard. Well, in this case, Mr. Burke, Max was 20 years old, right, when he was incarcerated? That is correct, Your Honor. He was going to be in prison for a few years. He would come out a registered sex offender, right? Correct, Your Honor. And I don't know if you even dispute whether he really had shown much interest in his education at this point. That fact was disputed on the petition. Mr. Baumgartner had alleged that Max had no interest in college. Susan Baumgartner answered the petition and denied that allegation. There was no evidence presented on that. The evidence that is in the record, one of the admitted facts on that petition, is that Max had started college. He had begun attending college. He was in college for a year. Well, what I'm getting at is if this court believes, and I think you stated it this way, you said that whether incarceration is an emancipating event is a legal issue, but then whether that emancipation occurred is a factual question that is subject to abuse of discretion, right? Correct, Your Honor. So if this court believes that incarceration can be an emancipating event, based on those facts, Max being 20 years old, incarcerated, a sex offender, arguably not showing interest in education, I know there's a factual issue there, where did the trial court go wrong? I mean, how can we say the trial court abused their discretion in saying in this particular case, emancipation had occurred? Unless you're making the argument, which, you know, Ms. Terva said that that isn't the argument, unless you're making the argument that incarceration can never be an emancipating event. I'm making the argument that incarceration can never be an emancipating event, and I'll explain that in a moment. Well, then there is no factual issue. Correct, Your Honor. To answer your question, your first question, if I understand you correctly, if we take as a given that incarceration is emancipating, then we do have the factual analysis, we do have the undisputed fact that Max committed these crimes, pled guilty to them, was in jail, was 20 years old. The disputed fact, then, is whether or not he had any remaining interest in college. And the court in ALTOP, which I do cite to in my brief, don't have the citation offhand, but the court in ALTOP stated specifically that the provision for educational expenses, the reason that that statute exists, is to provide for educational expenses when the need arises, that it specifically anticipates that we cannot tell from what's happening today or what happened yesterday what that child will need in the future or want in the future or be capable of in the future. What about the sex offender nature, the reporting nature, and some of the prohibitions that go along with that as far as being at a private or public school? Should that be factored in? Are we taking incarceration as emancipation as a given? I think we have to, yeah. I mean, obviously, if this court says that incarceration can never be an emancipating event, I think the inquiry stops. So, yeah, taken as a given. Taken as a given. Thank you, Your Honor. Taken as a given, yes. I think that needs to be taken into consideration. And under the facts of this case, what I would like this court to understand is that for Max in particular, he can go to college, that the particular statute in the Code of Corrections that restricts a sex offender's access to certain public places does not prohibit entirely an offender's presence in a public park. They may not loiter there. They may not be there when children are there. For an adult offender at a place of higher education, I believe there's an age limit in the statute, but it is directed towards colleges, post-secondary education, that sex offenders may be there, they may attend classes. I believe there is a check-in requirement in that, that every morning when that offender enters the school, they must check in with the dean, the principal, the chief administrative officer. And when they leave the school, they must also check out. It's a daily routine, but it does not preclude a sex offender from attending a place of post-secondary education. It covers university colleges, vocational schools. It's not limited to a university. There are different requirements that do not apply under the facts of this case. There are different requirements for an offender entering secondary or certainly primary education, daycare centers, things like that, those they're prohibited from. So, yes, that would be a factual consideration. As to my argument, the appellee's argument, that incarceration should never be an emancipating event, it goes to the nature of these factual issues. It certainly goes to the nature of Max's crime. These are very, again, these are very ugly facts here. I can't imagine a more difficult way to present this question to the court, that we do have an adult child, that we do have such an offensive crime that this young man committed. But for the other common law, means of emancipation, marriage, self-support, the cases that analyze those do a factual analysis. It's a given that marriage is an emancipating event. The courts then look at whether the facts of the case constitute a valid marriage. Is the child living at home still with their parents, or are they, you know, the cases that I've seen, I believe, are both for women. Are they living with their husband? Are they self-supporting? For self-support, those are insurance cases where I've seen a self-support analysis. Again, is the child living at home? Are they living in an apartment someplace, in their own home? Are they earning a living? If this court decides to announce a rule that incarceration is emancipating, then the facts that you begin to look at are not whether or not self-support has occurred, whether, you know, the child is truly out on their own, making their way in the world, making a positive contribution to society. What you're looking at is the nature of the crime. How severe is the crime? Is this crime bad enough to warrant taking child support obligation away? That's the other way to look at this whole problem. Mr. Kirk? Yes, Your Honor. If you're suggesting that we look at the crime, but what about the dissolution of judgment itself? Justice Wolfson said in his dissent that the educational expenses were conditioned on the child's desire and ability to further his education, and then he further went on to say that Max had really truly abandoned any desire from what the record shows, because he really only went to one or two semesters at Oakton Community College and received poor or failing grades. Are we to take that into consideration as well? Yes, Your Honor. Because the parties agreed to that, didn't they? That Max had to show a desire. Yes, Your Honor. I certainly debate, and from the record, I take issue with whether or not the naked fact of Max's incarceration by itself leads to the conclusion that Max didn't want to go to college anymore. No, but I'm looking at the facts that Justice Wolfson said it was conditioned on his desire, and the facts in the record, if this is true, shows that he only went to one or two semesters, and I don't know if that's clear, and he received poor or failing grades. Now, is that in the record? No, Your Honor. That is not. Mr. Baumgartner, in his petition for modification, alleged that Max received poor or failing grades but presented no evidence on that. There is no evidence in the record what Max's grades were. Your opponent has suggested that incarceration is always tantamount to emancipation. Yes, Your Honor. You've said it never is tantamount to emancipation. Is there a mid-ground that it becomes a factual determination as to whether or not the facts and circumstances of this case, this person, is an emancipating event? No, Your Honor, I don't think so. Then why not? That brings us into the policy territory, which I think this question is almost, as a legal question, is almost entirely a policy question. Do we want to establish the policy in the state of Illinois that once somebody has done something wrong, we remove a means of support, a means of bettering them, a means of making them a useful citizen? And I think finding a middle ground, even a middle ground, would be at odds with the policies that were enunciated in the Governor's Commission on Safety and Reentry, which is the study that I cited to that one of their strong recommendations, out of their five recommendations for how to return convicts to society, former felons, one of the five that they strongly urged was education. The Illinois Department of Corrections, I cite to their 2008 annual report, the state saved $64 million in four years with programs on education, rehabilitation, drug rehabilitation, things of that sort. It makes practical sense to do this. It betters the state. And I think that even a middle ground on some crimes are emancipating, some are not. Some length of sentence are emancipating, some are not. You're once again back into do we take this away from the offender or do we not? And when you're taking something away from an offender, you're into the realm of punishment, and that's in the realm of the General Assembly. That question needs to be addressed by the General Assembly. Picking up on Justice Burke's highlighting of the dissent, what's wrong with Justice Wolfson, and I believe he cited the Altop case for the proposition that an adult's abandonment of education, the abandonment issue, could be an emancipating event, and then extrapolates from there that that abandonment occurred when the 20-year-old pled guilty to two felonies involving sexual abuse of a child. That showed his intention to abandon his education by committing the offenses, and therefore that's the emancipating event, not necessarily the incarceration, but rather the fact that he chose to abandon his education by what he did. You know, I'm going to do something here that I think we're all taught not to do. I respect Justice Wolfson a lot. I have had the pleasure and great opportunity to meet the man. He is now the acting dean of my alma mater, I believe. I've read many of his opinions. He is a careful jurist. He is solid on his law. This is a sex crime. Justice Wolfson's opinion, with, again, all due respect to him, although Altop, I believe, does stand for the proposition that one may abandon their education, in the Altop case, what was at issue there was a young man who had reached his majority. It was not an emancipation question, but the father had petitioned to end his obligation to pay college expenses. The son was an adult. He had not gone to college. He was working. He was making money. And the appellate court in Altop ruled that just because he was not in college now did not mean that he had abandoned his education. And that's where I quoted earlier that the Altop court said, and they put the emphasis in the opinion, it's italicized, that the provision for college expenses is there for when the need arises. They had emphasized that. This is a very difficult case because it's a sex crime. It is a repulsive act. It's a very difficult thing to look at. But, again, I urge the court to remember that we are fashioning a rule here that will apply to all crimes, to all incarceration, and that if we find a middle ground, then on a case-by-case basis, we're asking the circuit courts to decide the severity of this crime. Does this crime put me off enough? Is it severe enough to warrant emancipation, to remove that support for education? This will also apply since emancipation and majority are separate and distinct questions. I let off in my brief with that guardianship of J.D. 2007 case makes the point very strongly that majority and emancipation are two separate questions. So the rule that we fashion here today will have to apply both to minors and to adults. Is a minor child, is a child of 15 or 16 to be emancipated if they boost a car and end up spending a couple of years in prison? If that child is tired of putting up with his parents telling him what to do and when he can go and when he can't and if he can use the car or can't, if he's savvy enough that there's a rule out there that incarceration is emancipation, well, maybe he'll go out and boost that car. If a father is tired of his child support obligation and his child gets into trouble, what encouragement is there under a rule that incarceration is emancipating? What encouragement is there for parents whose children are in trouble to help their parents or just leave them to the system? Let's see what happens. Maybe I won't have to pay support anymore. Let's say that child is 12, 13, 14. They get in trouble. They serve adult sentences. This question goes beyond the facts of Max's case. So with, you know, as I began with great respect to Justice Wolfson, reading that dissent and reading his other opinions, I see in that what is unavoidable here, that we all have an emotional reaction to these facts. And that's what I said. I know you're not supposed to do that, but that's the best answer I can give you, Your Honor. Thank you. Thank you, Counsel. Thank you. Your Honors, there are no cases directly on point anywhere in the nation. All of the research that the trial court did, that Counsel and I did, we couldn't find a single case directly on point. The people of the state of Illinois need guidance on this issue. It sends the wrong message to the people of the state of Illinois to state that if you get married, you join the military, that's emancipating. But if you choose as an adult, and we are not asking you to decide anything regarding minors, a 15-year-old boosting a car is not before you. A 20-year-old reoffender is before you. We are asking that choices made as an adult be treated as such, as an adult. Max made the choice to reoffend, which led him to prison, which led him away from parental control and his family's influences. Those were choices as an adult. I believe the state and the people need guidance as to what is unacceptable, and it is unacceptable to say that you can do positive things and be emancipated, but if you do a very, very negative thing, so much so that you offend the laws of the state of Illinois and are incarcerated, that that's okay. The trial court should have the discretion to decide these matters, and I believe the trial court appropriately did so. And regarding the Alltop case, that child was living at home, saving for money for college, and had immediate plans to attend a specific college. So I would say and urge this court to overrule the First District. Counsel, what do you think about the, I know your PLA mentioned the standard review is de novo, but is this a substantial change in circumstances question? I thought I heard your opposing counsel indicate that the court really didn't look at the, or that there was a finding, but you really didn't rely on the finding of substantial change, that it was simply an emancipation. I'm trying to get it straight. Is this a de novo question or an abuse of discretion review standard? I believe it's de novo. The court made a finding that emancipation is incarceration. Now, she did that in this context, and there was no, there was an agreement by the parties that the facts that were presented were the facts. So there was not any testimony as to those facts. If it is strictly de novo, if this court believes that incarceration equals emancipation, how do you address the public policy arguments that we heard from Mr. Kirk in maybe the last five minutes of his presentation? Well, I would say that the legislature has spelled out the criminal code, and what the Department of Corrections does in its own authority to reintegrate offenders back into society is within their purview. But here, under the Marriage and Dissolution of Marriage Act, the trial court has to deal with what's before it. And before the trial court was an adult who chose to follow a path that led to the Department of Corrections. And I believe those facts are controlling. I don't believe that it sends an appropriate message that it's okay to be incarcerated. Your parents will still have to pay for your college. Thank you. Case number 109047 will be taken under review.